UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:05CR-21-R

UNITED STATES OF AMERICA                                                                             PLAINTIFF

v.

HAROLD G. HANKINS                                                                                      DEFENDANT

OPINION AND ORDER

This matter is before the court on Defendant's Motion to Suppress or Dismiss (Dkt. # 16). The Government has responded (Dkt. # 18). The matter is now ripe for decision. For the reasons that follow, the Motions to Suppress or Dismiss are **DENIED**.

BACKGROUND

While Mr. Hankins was awaiting trial on state charges of manufacturing marijuana, which are now federal charges, James Morgan Chick and Agent David Hayes made plans for Mr. Chick to tape record conversations with Mr. Hankins (Dkt. # 16). The Government alleges that Mr. Hankins had told Mr. Chick that he wanted to hire someone to kill the South Central Kentucky Drug Task Force Director Jim Devasher (Dkt. # 18). After Mr. Chick informed Agent David Hayes, Agent Hayes asked Mr. Chick to go to Mr. Hankins's home and talk to him about hiring someone to kill Mr. Devasher (Id.). On November 9, 2004, Mr. Hankins invited Mr. Chick into his home and Agent Hayes had equipped Mr. Chick with a recording device to record the conversation. (Id.). Equipped with a recording device, Mr. Chick went to Mr. Hankins's house again on November 16, 2004 and November 18, 2004 (Id.). On both of these occasions, Mr. Hankins invited Mr. Chick inside his home (Id.).

1

During these three taped conversations, several things were discussed. First, there was a discussion about hiring someone to murder Mr. Devasher (Id.). Second, Mr. Hankins talked about crippling Mr. Devasher (Id.). Third, Mr. Hankins said he might kill Mr. Devasher himself (Id.). Next, Mr. Hankins said he wanted to kill Sheriff Whittaker (Id.). Finally, Mr. Hankins said that although he would like to see Mr. Devasher shot, he wanted to put the hit man on hold until he saw what was going to happen with his case (Id.).

## DISCUSSION

Mr. Hankins argues that Mr. Chick's taping of conversations inside Mr. Hankins's home constitutes an illegal search and seizure. In *On Lee v. United States*, 343 U.S. 747 (1952), the petitioner argued that the informant's entry on his property was a trespass because the entry was obtained by fraud because he did not tell him the true purpose of his entry. *Id.* at 753. The Court rejected this argument. *Id.* The petitioner also argued that equipping the informant with a transmitter so the agent could hear the conversation was a violation of his Fourth Amendment right to be free from unlawful searches and seizures. *Id.* The Court found no violation of the Fourth Amendment. *Id.* at 754.

"Government may utilize information voluntarily disclosed to a governmental informant, despite the criminal's reasonable expectation that his associates would not disclose confidential information to the authorities." *United States v. Jacobsen*, 466 U.S. 109, 123 (1984) (citing *United States v. White*, 401 U.S. 745 (1971)(plurality opinion)). *See also United States v. Baldwin*, 632 F.2d 1, 3 (6th Cir. 1980) (Jones, J., dissenting from denial of petition for rehearing). ("A conversation belongs equally to all participants. Thus, no one can have an expectation of privacy about the use of a conversation by a participant.") "If the conduct and revelations of an agent operating without

electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." *United States v. Caceres*, 440 U.S. 741, 750 (1979). *See also Katz v. United States*, 389 U.S. 347, 351 (1967). ("For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

In *Hoffa v. United States*, 385 U.S. 293 (1966), the Court found that when a guest in hotel room invites another person into the room, the guest is relying on the misplaced confidence on the other person keeping their conversations private. *Id.* at 302. The guest is not relying on the security of the hotel suite. *Id*. Therefore, the Fourth Amendment is not implicated. *Id.* A hotel room has the same Fourth Amendment protection as a home or office. *Id.* at 301.

In this case, Mr. Hankins invited Mr. Chick into his home. While in the home, Mr. Chick taped the conversations for Agent Hayes. There is no Fourth Amendment violation because Mr. Chick was there with Mr. Hankins's invitation. The fact that Mr. Hankins did not know Mr. Chick's real purpose of being there is irrelevant. *See On Lee*, 343 U.S. at 753. Mr. Hankins's mistakenly believed that his conversations with Mr. Chick would not be revealed to law enforcement. Under *Hoffa*, *Jacobsen*, and *Caceres*, it is legal for law enforcement to use Mr. Chick to tape conversations with Mr. Hankins.

Mr. Hankins also argues that he did not make a "true threat" under *Watts v. United States*, 394 U.S. 706 (1969). The issue of whether the threats constitute a "true threat" is a question of fact for the jury, not a question of law for the court. *Melugin v. Hames*, 38 F.3d 1478, 1485 (9th Cir.

1994); *United States v. Amor*, 24 F.3d 432, 436 (2d Cir. 1994). Whether the threats made by Mr. Hankins were serious or conditional are questions of fact for the jury to decide when they have heard all of the evidence. There is no doubt in this case that Mr. Hankins made statements that he would like for Mr. Devasher to be killed or crippled and Mr. Whittaker to be killed.

**IT IS HEREBY ORDERED:**

The Motion to Suppress or Dismiss (Dkt. # 16) is **DENIED**.


cc:     Counsel